## LUCIUS G. FISHER

### *v.*

### THE STATE OF ILLINOIS.

*Opinion filed December 31, 1902.*

1. RESPONDEAT SUPERIOR—*State not bound where agents have transcended their powers.* State cannot be bound by acts or contracts of its officers or agents where such officer or agent has transcended or exceeded his lawful or legitimate powers.

2. RATIFICATION—*of unauthorized acts by State.* The State may ratify unauthorized acts of its officers or agents.

Claimant in this case asks for an award in the sum of thirty-nine hundred eighty-nine and 98-100 dollars ($3,989.98) for rent and accrued interest thereon for rooms belonging to claimant, occupied by the State Architect as his offices, from the first day of September, A. D. 1899, to the 15th day of September, A. D. 1901. The record shows that R. Bruce Watson was appointed

State Architect by Governor Tanner on July 1, 1899, under the provisions of an act creating the office, approved April 24, 1899, and in force July 1, 1899. The act under which the State Architect was appointed provided the amount of salary he should receive, and defined his duties and powers, but made no provisions for the expense of an office to be occupied by him, and conferred no authority upon the State Architect, nor any other officer of the State, to create any liability against the State for office rent, or expense of any kind.

It is a well established rule of law that the State cannot be bound by the acts or contracts of its officers or agents, where such officer or agent has transcended or exceeded his lawful and legitimate powers.

> Throop on Public Officers, Sec. 551, and cases cited.
>
> Mechem on Public Officers, Sec. 834, and cases cited;

It is also a well established rule of law that a State may ratify the unauthorized acts of its officers or agents.

> Mechem on Public Officers, Sec. 535, and cases cietd;
>
> Throop on Public Officers, Sec. 551, and cases cited.

It is contended by counsel for claimant in this case that the State has ratified the act of the State Architect in renting the offices, and that the State is therefore liable for the claim, whether the State Architect had any authority to make the contract or not.

The record shows that at or about the time the State Architect was appointed, he went to Springfield, and that he and Governor Tanner called upon the Secretary of State, and asked him, as Custodian of the State House, to furnish an office for the State Architect, who informed him that none of the rooms in the State House originally intended for offices were vacant, but that he could, however, furnish a room for Mr. Watson on the fourth floor, and that he referred the matter to the Superintendent of the Capitol Building, Capt. R. J. Beck. The

Secretary of State also testified that the Governor argued that a room should be furnished for the State Architect because the office was one that should be located at the capital of the State.

Capt. R. J. Beck testified that he took Mr. Watson to room 17, on the fourth floor, which was about twenty-four feet square, with two windows, and told him that he could have that room for his office; Mr. Watson was not satisfied with the room in its then condition, and wanted it painted, dadoed and frescoed, and put in better shape. This he was willing to do, and told Mr. Watson he would do whenever he was ready and willing to occupy the room, but that Mr. Watson never returned to inquire about the room.

Mr. Watson testified that the room was not satisfactory, and that he so reported to Governor Tanner, and that the Governor authorized him to rent rooms, and that, acting on the authority given him by the Governor, he rented rooms 1800, 1802, 1804, 1806, 1808, 1810 and 1812 in the Fisher Building, on the corner of Dearborn and Van Buren streets, in the city of Chicago, which premises belonged to the claimant, and entered into a lease on the 10th day of July, 1899, whereby said premises were demised to the State of Illinois from the first day of August, A. D. 1899, to the 30th day of September, A. D. 1903, at a monthly rental of two hundred ninety dollars ($290.00) per month. The lease was offered in evidence and was signed

"State of Illinois, by R. Bruce Watson, State Architect."

He further testified that he afterwards ascertained that on account of the falling off of the work for the State, he could get along with less room, and entered into a new lease with claimant on the 16th day of February, A. D. 1900, leasing two of said rooms, Nos. 1800 and 1802, from the first day of March, A. D. 1900, to the 30th day of April, A. D. 1903, at a rental of one hundred dollars ($100.00) per month, and executed the second lease in the same manner he did the first, and was released from obligation of the first lease. He also

testified that he occupied these two rooms from March 1, 1900, as State Architect, until September 15, 1901, at which time he surrendered them to claimant. He is corroborated in all of his testimony in regard to renting the rooms by Charles B. Osborne, who was the agent of the claimant, and who testified that the rental value as fixed in the leases was a reasonable rental value.

We do not think these facts sufficient to show a ratification by the State of the action of the State Architect in renting the rooms. The mere fact that the Governor authorized the State Architect to rent the rooms did not clothe him with legal authority necessary to bind the State. There is no more law authorizing the Governor to execute a lease of this kind than there is to authorize the State Architect, and the fact that the Governor directed the State Architect to execute the lease, if he did do so, would not in any way affect the liability of the State.

It is strenuously urged by counsel for the claimant that a substantial benefit accrued to the State of Illinois from the use of the rooms by the State Architect, and authorities are cited where it has been held under such circumstances, that a ratification by the State would be presumed.

We are unable in this case, however, to see where the State has derived any benefit by the occupancy of the rooms by the State Architect, that it would not have derived if the State Architect had performed in his own private office the duties required of him by the statute under which he was appointed. The act did not require the State Architect to maintain a public office at any place, and did not require him to give up his private business for the business of the State, and the record does not show that he did do so. The statute under which he was appointed gives him a salary of five thousand dollars a year, and we are of the opinion that this salary, when taken in connection with the salary allowed other State officers, is amply sufficient for the State

Architect to provide any additional room he may require in Chicago, to his private offices, and yet leave remaining a larger salary than is received by most of the officers of the State.

Believing, therefore, that the State Architect was not legally authorized to contract for the renting of rooms, and that the State is not bound for the payment therefor, the claim is rejected.