### ARTHUR FRANTZEN COMPANY
#### *v.*
### THE STATE OF ILLINOIS.

*Opinion filed December 31, 1902.*

1. STATE ARCHITECT—*has no authority to create any liability against the State.* The act under which the Supervising or State Architect was appointed, provided the amount of salary which he should receive, and defined his duties and powers, and made no provision for expenses of the office, and conferred no authority upon the State Architect, or any other person, to create any liability against the State for office rent, or expense of any kind.

2. RESPONDEAT SUPERIOR—*State not bound where officers have transcended their powers.* The State cannot be bound by the acts and contracts of its officers or agents, where such officer or agent has transcended or exceeded his lawful and legitimate powers.

3. PUBLIC OFFICERS—*person deals with officer at his peril.* A person dealing with an officer must at his peril, ascertain the extent of his power.

This is a claim for certain materials furnished, and labor performed by the claimant, a corporation duly incorporated under the laws of the State of Illinois, in equipping the offices of the Supervising Architect of the State of Illinois, or State Architect, with certain electrical appliances, consisting of an office telephone system, electric bells and push buttons, connecting the various offices with one another, and with the waiting room of said offices.

There is no dispute about the facts in the case. R. Bruce Watson was appointed Supervising Architect of the State of Illinois by Governor Tanner, July 1, 1899.

under the provisions of an act creating the office, approved April 24, 1899, and in force July 1, 1899.

The only evidence in the record is the testimony of the Supervising Architect, and W. R. Rattenbury, president of the said claimant corporation. The Supervising Architect testified that sometime after his appointment, the Governor told him to rent space and go ahead and make necessary arrangements to get out certain work for the State; that he rented space in the Fisher Building, in the city of Chicago, and had several different offices that necessitated some annunciators, push buttons, etc., in conducting the business of the office, and that he ordered the work done by the claimant through his assistant. That the bill, as first presented, was for one hundred thirty-four and 70-100 dollars ($134.70) ; that representatives of claimant called several times at his office to collect the bill, but that he made objection to the amount of the bill, and refused to approve it; that the bill was afterwards rectified and cut down to one hundred four and 70-100 ($104.70), which he thought a reasonable amount, and that he approved the same, and accepted the work on behalf of the State; that he then informed the representatives of the claimant that the law creating the office of the State Architect did not make any provisions for office rent, equipment of office, and the payment for the same, but that he had been given to understand by Governor Tanner that the matter would be adjusted, and instructed to go ahead and take steps to have the necessary work done. He further testified that he took the matter up with Governor Tanner, and afterwards with the State Board of Charities, but that the State Board of Charities made no provisions or arrangements to pay the bill, and that the Governor approved their action.

W. H. Rattenbury testified that he was the president of the claimant corporation, that said service and material were furnished by claimant on the order of the Assistant of the State Architect, that the prices charged were the usual and regular prices charged for that char-

acter of work; that the amount claimed was due and unpaid. He first stated that the work was done in April or May, A. D. 1900, but corrected the statement after investigation, and stated that the work was completed in September, A. D. 1899; that the first bill rendered to the State Architect, was for the sum of one hundred thirty-four and 70-100 dollars ($134.70), but that the work was not itemized in that bill; that the bill was held by the State Architect until April or May, 1900, at which time he requested an itemized statement; that the itemized statement or second bill was for one hundred four and 70-100 dollars ($104.70), and was dated in May, A. D. 1900; that he did not know positively whether the State Architect, or the State, was to pay the bill, but that he considered the order of the Architect a sufficient guaranty that the money would be paid.

The claim was filed in the office of the Auditor of Public Accounts on the 10th day of April, A. D. 1902, and is resisted by the Attorney General for the following reasons:

First: That the claim, if any ever existed, is barred by the statute of limitations.

Second: That the work was not done for, or received by the State of Illinois, and there is no liability on the part of the State for the payment of the claim.

Third: That R. Bruce Watson, who ordered the work done, had no authority to contract for the work on behalf of the State, or to bind the State for the payment therefor.

In the claim filed by the claimant corporation, and sworn to by the witness Rattenbury, it was set out that the work was done in the months of April or May, of the year 1900, but in his evidence given in the case, he stated that he desired to correct his testimony, and stated that the work was done in the month of September, 1899.

Section 4 of an act to limit the time of bringing claims against the State of Illinois, approved March 1, 1847,

Hurd's Statutes, 1901, page 418, provides that all unliquidated claims against the State shall be proved up, and filed within two years from the time such claims may have arisen.

As more than two years intervened between the time when the work was done and the material furnished, and the time when the claim was filed with the State Auditor, it is barred by the statute if unliquidated. If, however, the State Architect had the power to bind the State, the claim became liquidated when he approved the bill and accepted the work.

The only question then for determination, is—did the State Architect have the power to bind the State.

The act under which the Supervising or State Architect was appointed, provided the amount of salary which he should receive, and defined his duties and powers, and made no provision for expenses of the office, and conferred no authority upon the State Architect, or any other person, to create any liability against the State for office rent, or expense of any kind.

It is a well established rule of law that the State cannot be bound by the acts and contracts of its officers or agents, where such officer or agent has transcended or exceeded his lawful and legitimate powers.

Throop on Public Officers, Sec. 551;
Mechem on Public Officers, Sec. 834;
*Tamm* v. *Lavalle,* 92 Ill., 263.

The same authorities also hold that every person dealing with an officer must at his peril, ascertain the extent of his power.

It is argued by counsel for claimant, however, that as the work performed by claimant was done in good faith, at the request of the State official who was acting in good faith, under the direction of the Governor who had appointed him, and as there is no dispute as to the services rendered and materials furnished, nor as to their value that the claim should not be defeated on mere technicalities.

We cannot, however, disregard the established rules of law.

"The authority of the officer being a matter of public record or of public law of which every person interested is bound to take notice, there is no hardship in confining the scope of the officer's authority within the limits of the express grant and necessary implication, and such is the well established rule. There can be no occasion or excuse in such a case for indulging in presumptions or relying upon appearances, but the authority must be traced home to its source, and must be shown actually to exist."

Mechem on Public Officers, Sec. 830.

The mere fact that the Governor authorized the State Architect to have the work done, did not clothe him with legal authority necessary to bind the State.

In the case of Floyd Acceptances, reported in 7 Wall, page 666, Justice Miller makes use of the following language:

"We have no officers in the government, from the president down to the most subordinate agent, who does not hold office under the law with prescribed duties and limited authority."

There is no law authorizing the Governor to direct the State Architect to have the work done, and the fact that he did so would not in any way affect the liability of the State.

The State Architect was not legally authorized to contract for the work on behalf of the State, or to bind the State for the payment therefor.

The claim is therefore rejected.