CHICAGO SERUM COMPANY

*v.*

STATE OF ILLINOIS.

*Opinion filed January 30, 1919.*

NON-LIABILITY OF STATE—*unauthorized act of officers or agents.* The State is not liable for the unauthorized acts of its officers or agents.

PUBLIC POLICY—*what acts of State officers or agents are against.* It is against public policy to permit individual members of a Board to act without authority from such Board, itself acting at a regular or special meeting. To permit such a practice opens the door for the perpetuation of fraud.

U. S. GOVERNMENT—*action of, does not make| the State liable.* That the United States Government recognized the arrangement and paid its one-half of the appraised value of the serum does not make the State liable for the other half.

AWARD OF APPRAISERS—*when null and void.* An award fixed by appraisers who were appointed without authority of law is null and void.

Edward J. Brundage, Attorney General, for State.

In the year 1915, and for some time prior thereto, the plaintiff was engaged in the manufacture of a substance called Anti-hog Cholera Serum, which was claimed by said Company to prevent hog cholera when swine were innoculated with said substance.

The plaintiff has its principal place of business in the City of Chicago, and State of Illinois. In the fall of 1915 the foot and mouth disease was prevalent in Illinois and other States of the Union, among cattle and hogs. The plaintiff was distributing and selling its product among the hog raisers and the breaking out of the foot and mouth disease among hogs where the serum manufactured by the plaintiff was used, raised a grave suspicion in the minds of the public authorities, both State and National, that its serum was infected with the germ of the foot and mouth disease.

In October, 1915, the members of the State Board of Live Stock Commissioners, representing the State of Illinois, and an agent of the United States Department of Agriculture, met the business manager of the plaintiff and talked over with him the situation. It does not appear that the members of the Board of Live Stock Commissioners met as a board at this meeting, as there is no record of their meeting in the evidence in this case, but after discussing fully the situation with the agent of the plaintiff, the members of the Board of Live Stock Commissioners of Illinois and the agent of the United States Agricultural Department on one part, and the Chicago Serum Company on the other, entered into a verbal agreement whereby it was agreed that the plaintiff should turn over to the Department of Agriculture of the United States

Government and to the Board of Live Stock Commissioners of the State of Illinois, all serum in its possession; that said serum would be appraised by two persons, one to be appointed by agents of the United States Agricultural Department and one by the members of the State Board of Live Stock Commissioners of Illinois, and that the plaintiff should be paid for said serum, whatever sum was fixed by the said appraiser one appraiser was appointed by the members of the Live Stock Commission of Illinois, and one by the Department of Agriculture of the United States Government. Said alleged appraisers met and adjudged that the serum of the plaintiff, to be turned over to the United States authorities and the Board of Live Stock Commission of Illinois, was valued at $10,106.58.

In all the dealings between the plaintiff and the Board of Live Stock Commissioners of Illinois, it does not appear that the board acted at any regular or special meeting. The business was talked over in a loose way by individual members of the board and no record was ever kept of any meeting or action had or taken by the Board of Live Stock Commissioners in reference to any of its dealings with the plaintiff. There was no adjudication or determination by any board, Court or tribunal as to whether the plaintiff's serum was infected with foot and mouth disease, or whether it was not. The plaintiff voluntarily surrendered and turned over the substance to the members of the Board of Live Stock Commissioners and to the agent of the United States Agricultural Department, upon the understanding that it was to be paid such price as was fixed by the persons alleged to be appraisers.

We do not believe that there is a legal claim against the State of Illinois by reason of this arrangement entered into by the plaintiff and the aforementioned parties. The members of the Board of Live Stock Commissioners of the State of Illinois had no authority whatever to enter into any such arrangement. There is no statute or law in this State by which the taxpayers of this State could be subjected to paying and compelled to pay for an alleged debt in this manner. The alleged appraisers had no standing before the law. They were not public officers nor appointed by any authority of law. They took no oath of office and there is no authority for appraisers to be appointed for such purpose and in such manner. So far as the liability of the State is concerned, the estimate of the appraisers is a nullity and absolutely void. There can be no foundation of a legal liability upon an award made by those men. It would be against public policy to allow officials of the State to enter into such loose transactions and unbusiness like dealings and to compel the taxpayers to be responsible for their unauthorized acts. The Board of Live Stock Commissioners never met and determined or adjudged whether this serum was infected or whether it was not, nor was it found out whether their suspicion was well founded or not. The plaintiff could have stood on its rights and before the property was confiscated or destroyed, compelled the State to establish the fact that it was infected, but the plaintiff seemed very glad of an opportunity to sell its

—5 C C

product without such a determination, and the Board of Live Stock Commissioners seemed perfectly willing to avoid the personal or official responsibility of attempting to establish their allegation that the serum was infected. If this serum was poisoned and infected then the people of the State of Illinois ought not to pay a single cent to the manufacturer and distributor of such a dangerous nostrum. If it was not infected, then the State authorities had no right or authority under the law, to purchase and destroy this substance at the expense of the taxpayers of the State.

There is no evidence in this case tending to show whether the substance was infected or whether it was not, but the alacrity of the plaintiff to sell the same to the State and Government authorities leads us to believe that it had a suspicion of the substance as well as did the public officers involved. The fact that the United States Government afterwards recognized this arrangement and paid one-half of the appraised value of the product, does not establish the liability of the State of Illinois to pay for the other half sued for in this case. Altogether, we believe it would be against public policy to make an award in this case and put on approval the loose conduct of all the parties concerned in the transaction here involved. If public officers can do business in the manner it is alleged they did in this case, the doors for the perpetration of fraud would swing wide open and the taxpayers would have no protection whatever. The demand of the plaintiff is disallowed.