(No. 4571-)

Alvin C. Feil, Claimant, vs. State of Illinois, Respondent.

*Opinion filed January 11, 1955.*

Donovan, Sullivan, Jeffers and Breen, Attorneys for Claimant.

Latham Castle, Attorney General; Marion G. Tiernan, Assistant Attorney General, for Respondent.

Wham, J.

Claim for damages in the amount of $2,438.80 is sought herein by claimant, Alvin C. Feil, the owner of a hog farm, known as El-Bar-Dee Farms, located near Elgin, Illinois. Said amount allegedly represents the value of certain hog feed, which claimant destroyed pursuant to orders of the Superintendent of the Division of Livestock Industry, Department of Agriculture, State of Illinois, in accordance with the statutes of the State of Illinois relating to diseased animals, Pars. 168-191, Chap. 8, Ill. Rev. Stats., (1951 State Bar Association Edition).

The evidence establishes that in August of 1952 claimant's hogs became infected with vesicular exanthema, a contagious disease, and the Superintendent of the Division of Livestock Industry placed a quarantine on claimant's farm because of the disease, within the terms of the above statute, and ordered claimant to destroy both the hogs and the feed therefor.

The above statute provides that the state may reimburse the owner of such destroyed feed and hogs, and Sec. 172, Chap. 8, Ill. Rev. Stats., (1951 State Bar Association Edition) provides the means for determining the amount of reimbursement to be made by the State of Illinois. It reads as follows:

"172. Appraisal—Destruction of animals or property. § 5. When the Department determines that any animal is affected with, or has been exposed to, any contagious or infectious disease, it may agree with the owner upon the value of the animal or of any property that it may be found necessary to destroy, and in case such an agreement cannot be made, the animals or property shall be appraised by three competent and disinterested appraisers, one to be selected by the Department, one by the claimant, and one by the two appraisers thus selected. The appraisers shall subscribe to an oath in

writing to fairly value such animals or property in accordance with the requirements of this act, which oath, together with the valuation fixed by the appraisers, shall be filed with the Department and preserved by it.

Upon the appraisement being made, the owner shall immediately destroy the animals, dispose of the carcasses thereof, and disinfect, change or destroy the premises occupied by the animals, in accordance with rules prescribed by the Department governing such destruction and disinfection, and upon his failure so to do, the Department shall cause such animals or property to be destroyed and disposed of, and thereupon the owner shall forfeit all right to receive any compensation for the destruction of the animals or property.".

On October 1, 1952, appraisers were selected in accordance with the terms of the above quoted section of the statute. They examined and appraised the hogs, but did not, however, appraise the hog feed at the same time.

After disposing of the hogs pursuant to orders of the Division of Livestock Industry, for which he was compensated in accordance with the aforesaid appraisal, claimant, on or about November 7, 1952, procured an appraisal of the hog feed remaining on his farm by one appraiser, namely, Roy E. Anderson, who had been the appraiser selected by claimant. He then destroyed the feed, and filed his claim, as certified by his appraiser, for reimbursement under the statute for the hog feed so destroyed. The amount of the appraisal was $2,438.80.

Payment on this claim was refused by the Division of Livestock Industry for the reason that the statute had not been complied with by claimant in that the prescribed method of appraisal required by the statute was not followed.

It is claimant's contention that respondent, by its conduct in the matter, has waived the portion of the statute requiring the appraisal to be conducted by three appraisers. Claimant contends that Mr. James C. Craven, legal advisor to the Department of Agriculture, informed his attorney that he would be compensated for

the feed, which he had been ordered to destroy. Claimant further bases his position upon the fact that he, claimant, called the attention of the appraisers selected by the Superintendent of the Division of Livestock Industry to the hog feed located on the farm in order that they might make an appraisal thereof, and that, despite this fact, said appraisers, so selected by the Superintendent of the Division of Livestock Industry, failed to appraise the feed, and that, after waiting approximately five weeks for such an appraisal to be made, claimant was forced to destroy the feed in order to put his hog farm back into operation.

It appears to the Court that the sole question involved herein is whether or not the above facts relied upon by claimant constitute a waiver on respondent's part of that portion of the statute prescribing a particular method of appraisal. It is respondent's contention that such facts do not constitute such a waiver, and that claimant voluntarily and knowingly departed from the mandatory appraisal procedure set forth in the statute.

It appears from the evidence that claimant, at the time the hogs were appraised, was advised by Dr. A. E. Cameron of the Division of Livestock Industry, and Dr. George W. Hess of the U. S. Bureau of Animal Industry, two of the three appraisers, that it would be necessary for the hog feed to be appraised at a later date. This fact claimant in his testimony admits. It appeared that the appraisal could not be made on the same date as the hogs were appraised in view of the fact that these appraisers were busily engaged at other premises due to the existence of the epidemic of vesicular exanthema in the area.

It further appears from the evidence that at no time between the date of the appraisal of the hogs and the

destruction of the feed by claimant, some five weeks later, did he make any effort to officially notify the Department of Agriculture or the Division of Livestock Industry of the fact that no appraisal of the feed had been made, nor did he inform such Department or Division that, unless an appraisal was made, he would be compelled to destroy the feed, and make a claim therefor upon the state.

We believe it was his duty to do so, if he intended to take advantage of the provisions of the statute allowing compensation for the destruction of such feed. Certainly he would not be required to wait indefinitely for such an appraisal, but, at the very least, it was his duty to inform the Department of the situation.

Claimant in his brief and argument infers from the testimony of one of his witnesses that Mr. James C. Craven, legal advisor to the Department of Agriculture, had assured claimant's attorney that claimant would be compensated for the feed, which he had been so ordered to destroy, and that claimant relied upon such assurance. It is respondent's contention with respect to claimant's position that not only did the said James C. Craven lack authority to make the alleged promise, but that the Division itself would lack the authority to make a promise to pay compensation in any manner not provided by the statute.

In this regard, we believe respondent is basically correct. It is fundamental that anyone dealing with an officer or agent of the state is bound to ascertain the extent of the authority of such officer or agent to bind the state, and must take notice of the statutory provisions bearing on the matter in issue. *Root* vs. *State,* 12 C.C.R. 144; *Lord and Bushnell Co.* vs. *State,* 13 C.C.R. 189; *Dutton* vs. *State,* 16 C.C.R. 64; *Illinois Central Rail-*

*road Company* vs. *State,* 18 C.C.R. 214; *Illinois Central Railroad Company* vs. *State,* 10 C.C.R. 493; *Harbeck* vs. *State,* 13 C.C.R. 70. Clearly, Mr. Cravens' promise, if he made it, was contrary to the method of arriving at the valuation of said feed required by the statute. The Constitution of the State of Illinois specifically precludes the payment of any claim by the state under any agreement or contract made without express authority of the law, and, therefore, payment under such a promise would be barred by Sec. 4 of Article XIX of the Constitution. *Illinois Central Railroad Company* vs. *State of Illinois,* 18 C.C.R. 214.

We further note that the testimony concerning the conversation with Mr. Craven did not reflect that Mr. Craven said to anyone that the appraisal requirement would be waived, nor was any agreed price for the feed entered into. The extent of such conversation was that the farmers would be compensated for the feed, if it was necessary to destroy it. This conversation seems to us to not be inconsistent with the requirement of an appraisal under the statute, and claimant, if he relied upon such conversation as waiving the statutory requirement, took considerable for granted. Even if there could be a waiver of the statutory requirement governing appraisals, we could not on this evidence find that such a waiver had been made.

Claimant further contends that his rights under the due process clause, contained in the Fourteenth Amendment of the United States Constitution, and Art. II of Sec. 2 of the Illinois Constitution of 1870, have been violated by the state proceeding under this statute, and further that claimant's private property has been taken without just compensation therefor, thus violating Sec. 13 of Article II of the Illinois Constitution of 1870. We

believe both of these positions are without merit, since the statute involved herein is clearly within the police power of the State of Illinois, and the reasonable exercise thereof by the Legislature in enacting said statute. *Durand, Et Al* vs. *Dison, Et Al,* 271 Ill. 382; *City of Chicago* vs. *Bowman Dairy Co.,* 234 Ill. 294.

Claimant's right for compensation for the destroyed feed from respondent lay solely within the statute. The terms of the statute were not complied with, nor did claimant follow a reasonable course in attempting to obtain compliance from the state.

It is, therefore, the judgment of this Court that claimant's claim should be, and is hereby denied.