(No. 77-CC-2199-)

E. L. SCHMIDT, d/b/a SCHMIDT TOWING SERVICE, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed August 3, 1979.*

BURDIT, CLAKINS and IMMEL (DALE R. TURNER, of counsel), for Claimant.

WILLIAM J. SCOTT, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

POCH, J.

Claimant filed a claim for the moving and storage of certain auto bodies and parts under the direction of the Illinois State Police from Neville's Auto Salvage to the State Fairgrounds in the City of Springfield. On the date of the hearing in this matter, held on April 5, 1978, the Claimant testified that said items were stored by him from and since November 7, 1973, and would be offered for sale pursuant to an order of the Circuit Court of Sangamon County, in Cause No. 672-77, which said sale was scheduled to be held on May 5, 1978. He further testified that the net proceeds received from said sale

would become the property of the Claimant herein, to apply to his storage lien against the items held in storage and be set off against any amount which may be found due Claimant in this cause. A breakdown of Claimant's claim is as follows:

1. 1,411 days storage at $48.00
 per day $67,728.00
2. Moving stored items 1,700.00
3. Interest at 9.5 percent compounded
 annually to April 5, 1978 22,172.86

 Total amount claimed $91,600.86

 Net proceeds of sale setoff (7,497.04)

 Net amount of claims $84,103.82

Claimant testified that when said items were originally moved on November 7, 1973, to the State Fairgrounds, he submitted a bill for moving, in the amount of $1,700.00, which was paid partly by the Illinois State Police and partly by the Office of the Secretary of State. Following the payment of the aforesaid amount, the Claimant was requested to return some of the items to Neville's Auto Salvage and instructed that the balance of the stored items be removed from the State Fairgrounds pending disposition of criminal proceedings then pending in the Circuit Court of Sangamon County. No evidence was introduced as to any arrangements having been made concerning payment for moving said items and for the storage thereof.

Claimant testified that the items to be stored pending disposition of the criminal proceedings were then removed to an unheated rental metal building, measuring approximately 40 feet by 70 feet, with approximately 30 percent of the floor being cement and the balance dirt, and for which he obligated himelf to pay the sum of

$150.00 per month. The Claimant's position in billing the State of Illinois is that there were the equivalent of 16 units which at a charge of $3.00 per unit would come to $48.00 per day, as above noted, for a monthly charge of $1,440.00.

It is the position of the Claimant that he entered into an oral contract with an agent of the State of Illinois and that since Claimant has performed under the alleged contract he is entitled to his ordinary and customary charges for towing and storage.

It is the position of the Respondent that the State did not enter into an enforceable contract since there was no showing that Claimant had dealt with anyone authorized to enter into such a contract and incur an obligation for towing and storage on behalf of the State of Illinois, and that the State, therefore, should not be held liable for unauthorized acts of its employees. Respondent further takes the position that the items were held in storage for the purpose of being available in the prosecution of criminal charges by Sangamon County and that the arresting officers were acting on behalf of the Sangamon County State's Attorney when Claimant was instructed to hold the items as evidence in anticipated criminal proceedings.

The issue before the Court is whether the State of Illinois, through its employees, entered into a contract for towing and storage with the Claimant, and specifically, whether or not the State Police Officer was authorized to enter into a building contract on behalf of the State of Illinois.

There is no evidence in the record that the State police officer had the authority to bind the State of Illinois to such a contract and it was incumbent upon Claimant to ascertain the extent of the authority of said

officer. Without evidence of such authorization, the State of Illinois cannot be bound by any such agreement.

*Busekrus v. State*, 13 Ill. Ct. Cl. 59;
*Arthur Frantzen Company v. State*, 1 Ill. Ct. Cl. 274;
*Chicago Serum Company v. State*, 4 Ill. Ct. Cl. 64;
*Fisher v. State*, 1 Ill. Ct. Cl. 270;
*Illinois Central Railroad Co. v. State*, 18 Ill. Ct. Cl. 214;
*Lord and Bushnell Company v. State*, 13 Ill. Ct. Cl. 189;
*Fell v. State*, 22 Ill. Ct. Cl. 74.

*The Illinois Central Railroad Co.* case held that the acting managing officer of the Lincoln State School and Colony who entered into the contract with the Illinois Central Railroad for the payment of demurrage charges had no authority to make the agreement. It was also held that whoever deals with a State agency does so with notice of the limitations on it or its agent's power, and those who contract with it or furnish it supplies, do so with reference to the law, and if they go beyond the limitations imposed, they do so at their peril.

In the instant case, the Claimant has totally failed to prove to the Court that the alleged contract was made by one authorized to enter into contracts with the State of Illinois and on this sole issue, the claim should be denied.

It is, therefore, ordered that the claim of E. L. Schmidt, d/b/a Schmidt Towing Service, be and it is hereby denied.