(No. 22222.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CARL ANDERSON, Plaintiff in Error.

*Opinion filed February 23, 1934.*

M. E. Nolan, and Barnes & Magoon, for plaintiff in error.

Otto Kerner, Attorney General, Earl Knox, State's Attorney, and Truman A. Snell, (R. B. O'Harra, of counsel,) for the People.

Mr. Justice Herrick delivered the opinion of the court:

An amended information was filed in the county court of Henderson county which charged the plaintiff in error, Carl Anderson, (hereinafter called the defendant,) with the violation of section 2 of the Bovine Tuberculosis Eradi-

cation act of June 25, 1929, hereinafter referred to as the Tuberculosis act. (Smith's Stat. 1933, chap. 8, par. 88, p. 146; Cahill's Stat. 1933, chap. 8, par. 75, p. 113.) So far as material to the issues here, section 2 of the act is as follows: "All owners of dairy or breeding cattle within the State of Illinois shall submit their cattle for a tuberculin test upon request of the Department of Agriculture, and shall provide necessary facilities for making tests and render such assistance as may be required by the Department. The direct expense of making such tests shall be paid by the Department," etc. A motion to quash the amended information was overruled. A jury trial followed. The jury found the defendant guilty. A motion for new trial and a motion in arrest of judgment were severally overruled and a judgment imposing a fine of $500 was entered against the defendant. He prosecutes this writ of error to reverse that judgment.

The facts are substantially as follows: The defendant on June 6, 1932, and for several years prior thereto as well as subsequent to such date, was living with his father and mother on a farm in Henderson county. The ownership of the farm was in the father. The ownership of the livestock hereinafter mentioned was a disputed fact on the trial of the case. There were on this farm on June 6 about twenty head of cattle, eight of which were cows. Dr. Zimmerman was a duly licensed veterinarian under the laws of this State and had been practicing his profession in this State for twenty-three years. For five years then last past he had been employed by the Department of Agriculture of this State (hereinafter referred to as the Department) as a tuberculosis inspector. He was an "accredited veterinarian," as defined by subdivision (a) of section 1 of the Tuberculosis act. Dr. Santee was a duly licensed veterinarian under the laws of this State and had practiced therein since 1914 and was a duly "accredited veterinarian." He had been for four years immediately

prior to June 6 a tuberculosis inspector under appointment by the Department. On June 6 Dr. Zimmerman and Dr. Santee went to the farm upon which the defendant resided. They met the defendant in the yard and some conversation ensued between the parties. There is some conflict as to just what words were spoken, but the evidence fairly tends to prove that the defendant was asked by Dr. Zimmerman if the cattle there on the place were his, to which he replied, "Yes." Dr. Zimmerman then told the defendant that he (Dr. Zimmerman) and Dr. Santee were representatives of the Department sent to test the defendant's cows. The defendant refused to permit the test of the cows and ordered the veterinarians off the premises and directed them to stay away. On the next day the two veterinarians returned with Dr. Jackson Brown, Dr. J. R. Mudd and two constables. Dr. Brown is a veterinarian and by appointment of the Department is the district tuberculosis inspector for the northern district of Illinois. Henderson county is included in that district. Dr. Mudd is a local veterinarian living in Henderson county. On this occasion Dr. Zimmerman and Dr. Santee, together with the two constables, went to the house where the defendant lived and there met him on the porch. In the conversation that followed Dr. Zimmerman told the defendant that he and Dr. Santee were the two men who had been there the preceding day and that they had returned to test the cattle. There is again a dispute in the evidence as to just what was said, but the defendant on that occasion refused to permit the test of the cattle and ordered the veterinarians off the premises. He then went inside the house, came back to the screen door with a shot-gun in his hands and told the two veterinarians and the two constables that he would give them until he counted ten to get out. The defendant's mother also appeared at the screen door and asked the men to leave before something terrible happened. The party left without any further at-

·tempt being made to test the cows alleged to belong to the defendant. The evidence further shows that subsequent to the filing of the amended information, and before the trial of the case in the court below, Dr. Brown had a conversation with the defendant in the court house at Oquawka. In this conversation the defendant asked Dr. Brown several questions relative to the tuberculin test as applied to dairy and breeding cattle, to all of which the doctor replied. At the·close of this discussion the defendant informed Dr. Brown that he would not permit his cattle to be tested and that he was going to fight.

The errors assigned on the record charge that section 2 of the act in question is violative of the constitution of this State and of the fourteenth amendment to the Federal constitution; also that the trial court erred in its rulings on the admission and exclusion of evidence and in the giving and refusal of instructions, and that the guilt of the defendant was not proved beyond a reasonable doubt.

That tuberculosis is a disease dangerous to and destructive of the human race has been recognized by the legislature of this State, and appropriate legislation has been adopted by the General Assembly for the treatment and cure, at the expense of cities and counties, of persons afflicted with this deadly disease. The health of the people is of prime importance to the State, both from an economic and social standpoint. It is the duty of the State to care for its sick and ailing who are not financially able to care for themselves, and this must necessarily be done at the expense of the tax-payer. With the increase of population the task of preserving the health of the people has become more acute and pressing. The prevention of disease and the resulting prolongation of human life are therefore not only a financial saving to the State but are also the promotion of the health and the happiness of the people. Tuberculosis is generally known to be a dangerous, infectious or communicable disease which attacks both the

human race and domestic animals. The existence of tuberculosis in dairy cattle is dangerous to human beings, particularly infants and children of immature years. Dairy and breeding cattle may become afflicted with it from other cattle suffering from the disease. It may be communicated to mankind by milk and other food products from infected animals. *Schulte* v. *Fitch,* 162 Minn. 184, 202 N. W. 719; *City of New Orleans* v. *Charouleau,* 121 La. 890, 46 So. 911.

This is the first occasion that the validity and constitutionality of this statute have been before this court. If the statute denies to the defendant any rights and privileges guaranteed to him under the constitution of the United States or under the constitution of this State, then the statute is not valid as a legitimate exercise of the police power of this State. Constitutional provisions are to be liberally construed in order that the legislative enactment may be sustained. All doubt and uncertainties arising from the constitution itself, as well as those in the statute, should be resolved in favor of the validity of the statute. *People* v. *Stitt,* 280 Ill. 553; *People* v. *McBride,* 234 id. 146.

Under our system of government there are three separate departments: the legislative, executive and judicial. The power to legislate is conferred by the constitution upon the legislative branch of the government. The judicial department cannot interfere with or molest this prerogative. Only in those instances where the legislature undertakes to enact legislation which is violative of either State or Federal prohibitions can the courts interfere and declare such legislative acts unconstitutional and a usurpation of power by the legislature.

The State has the inherent power, which may be exercised by the legislature by way of legislative enactment, to place such restraint upon private rights as may be deemed necessary to preserve or improve the health and comfort of the people and the welfare of society. This power is

generally called the police power. The legislature may, in the exercise of this power, enact laws not only regulating and restraining, but also prohibiting, those things which are harmful to the well-being of the people; and this is true even though such regulation, restraint or prohibition interferes with the liberty or property of an individual. (*Booth* v. *People*, 186 Ill. 43, affirmed in 184 U. S. 425, 46 L. ed. 623; *People* v. *Robertson*, 302 Ill. 422; *Chicago, Burlington and Quincy Railway Co.* v. *Illinois*, 200 U. S. 561, 50 L. ed. 596.) The police power extends to the enactment by the legislature of such laws as are reasonably necessary to the preservation and promotion of the health and welfare of the people, and it is not only the power but the duty of the legislature to enact such laws. (*People* v. *Robertson, supra; People* v. *Witte*, 315 Ill. 282.) Neither the fourteenth amendment to the Federal constitution nor any provision of our State constitution was designed to interfere with the police power of the State to enact and enforce laws for the protection of the health, peace, morals and general welfare of the people. *Powell* v. *Pennsylvania*, 127 U. S. 678, 31 L. ed. 253; *Lawton* v. *Steele*, 152 id. 133; *People* v. *Robertson, supra; Durand* v. *Dyson*, 271 Ill. 382; *Sings* v. *City of Joliet*, 237 id. 300.

Cattle suffering from a dangerous, infectious or communicable disease are public nuisances at common law. A nuisance at common law could not be legalized. (*Durand* v. *Dyson, supra; Ferguson* v. *City of Selma*, 43 Ala. 399.) The proper exercise of the police power is not confined to the suppression of those things which were nuisances at common law, nor need the evil sought to be removed be declared a nuisance by the statute so long as the object sought to be attained can properly be reached by such power. (*Fevold* v. *Board of Supervisors*, 202 Iowa, 1019, 210 N. W. 139; *Durand* v. *Dyson, supra.*) For the preservation of the public health the State may intervene. In such interference the legislature may determine what the

welfare of the public requires and what measures are necessary or expedient for the protection of the public. *Durand* v. *Dyson, supra; People* v. *Witte, supra; People* v. *Robertson, supra.*

The manifest purpose of the statute here under consideration is to protect the public health. Legislation in the interest of public health is a proper exercise of the police power of the State for the suppression and prevention of a disease deadly in its effects upon the human race and upon domestic animals. The State has the right to require dairy cows and breeding cows to be subjected to the tuberculin test. (*Durand* v. *Dyson, supra; Fevold* v. *Board of Supervisors, supra; Loftus* v. *Department of Agriculture*, 232 N. W. (Iowa) 412; *State* v. *Heldt*, 115 Neb. 435, 213 N. W. 578; *State* v. *Splittgerber*, 229 N. W. 332; *Schulte* v. *Fitch, supra; Adams* v. *City of Milwaukee*, 144 Wis. 371, 129 N. W. 518, affirmed in 228 U. S. 572, 57 L. ed. 971; *State* v. *Nelson*, 68 N. W. (Minn.) 1006; *Hawkins* v. *Hoye*, 66 So. (Miss.) 746; *City of New Orleans* v. *Charouleau, supra; Patrick* v. *Riley*, 287 Pac. (Cal.) 455; *People* v. *Teuscher*, 248 N. Y. 454, 162 N. E. 484) The Federal government has recognized the danger of tuberculosis in dairy and breeding herds and has taken steps to coöperate with the several States in the suppression of the disease, (Foods and Drugs, Mason's U. S. Code, title 21, sec. 114, p. 1279,) and rules have been promulgated for that purpose by the Secretary of Agriculture.

It is contended by the defendant that he was entitled to notice before any attempt was made by the Department to test his cows, and that the provisions of the act violate the due process of law provision of the constitution The destruction or sequestration of animals or food injurious to public health is a matter that requires urgent and prompt action. Delay only increases the opportunity for further harm to the public. The nuisance created by the keeping of cattle suffering from tuberculosis is a continuing one

and a constant source of danger. Summary action is necessarily required to meet the exigencies of the situation. Public measures dealing with the protection of the lives and health of the people warrant the immediate seizure and destruction of property dangerous to the lives and health of those consuming it. Tubercular cattle fall within this category. (*Loftus* v. *Department of Agriculture, supra; Peverill* v. *Board of Supervisors,* 222 N. W. 535; *Kroplin* v. *Truax,* 119 Ohio St. 610, 165 N. E. 498; *North American Cold Storage Co.* v. *Chicago,* 211 U. S. 306, 53 L. ed. 195; *Lawton* v. *Steele, supra; Durand* v. *Dyson, supra.*) The due process rule is not a limitation upon the right of the State to exercise its power unless the attempted exercise is arbitrary or unreasonable or an improper use of such power. (*Terrace* v. *Thompson,* 263 U. S. 197, 68 L. ed. 255; *Radice* v. *People,* 264 id. 292, 68 L. ed. 690.) Due process of law does not necessarily mean judicial proceedings in some court of competent jurisdiction. (*Italia America Shipping Corp.* v. *Nelson,* 323 Ill. 427; *Wilmot* v. *City of Chicago,* 328 id. 552.) Summary seizure and destruction without a hearing do not violate the due process clause of the Federal constitution. *North American Cold Storage Co.* v. *City of Chicago, supra; Powell* v. *Pennsylvania, supra; Lawton* v. *Steele, supra; Durand* v. *Dyson, supra; Sings* v. *Joliet, supra; Shipman* v. *State Livestock Sanitary Com.* 115 Mich. 488; *Miller* v. *Horton,* 152 Mass. 540; *People* v. *Teuscher, supra.*

It is contended that the law is unconstitutional in delegating to the Department the power and authority to make the tuberculin tests or to have them made. The legislature had the power to pass a law upon the subject of the suppression of tuberculosis in dairy and breeding cattle. As a necessary adjunct to such power it had the right to adopt a procedure for the administration of such law. It had the lawful right to invest the Department with certain discretion to be exercised by it, acting through its agents,

in the discharge of its functions as a ministerial and administrative agency. The powers granted were neither judicial nor legislative. (*People* v. *Roth,* 249 Ill. 532; *People* v. *Robertson, supra; Klafter* v. *Examiners of Architects,* 259 Ill. 15; *Gundling* v. *City of Chicago,* 177 U. S. 183, 44 L. ed. 725, affirming 176 Ill. 340; *Wilson* v. *Eureka City,* 173 U. S. 32, 43 L. ed. 603.) There was no constitutional violation by the powers granted to the Department by the act.

It is also contended that the provision of the act providing for the making of the test, referring to the owner of livestock, viz., "and shall provide necessary facilities for making tests and render such assistance as may be required by the Department," is too broad in conferring powers upon the Department and is unconstitutional, indefinite and uncertain. If such clause were invalid it would not render the whole act unconstitutional. The crux of the act providing for the owner of dairy and breeding cattle to submit them to the tuberculin test would still remain in force. The provision for assistance and facilities at the request of the Department is only incidental to the purpose of the act. It is not shown by the record that the Department has promulgated any unreasonable or arbitrary rules under this power. The defendant was not injured by the provisions of the act providing for assistance and facilities. He did not base his refusal to have his cows tested upon the arbitrariness or unreasonableness of any requirement of the Department for the administration of the act or any demand that he furnish assistance or facilities in making the test, but refused, under any circumstances, to have his cattle tested. Until he was hindered, affected or prejudiced by the attempt of the Department to enforce this provision of the act he is in no position to complain. (*Winter* v. *Barrett,* 352 Ill. 441.) However, in numerous acts providing for the suppression of disease among domestic animals we find various provisions requiring things to be

done in and about the enforcement of similar legislative acts. Some of these are as follows: The taking of diseased cattle to slaughtering pens, to be there slaughtered.— *City of New Orleans* v. *Charouleau, supra;* the isolation by the owner of afflicted livestock, the caring for, mode of handling, treating and feeding under the directions of the State Livestock Sanitary Commission.—2 Comp. Laws of Mich. chap. 145, sec. 7, par. 5633; *Shipman* v. *State Livestock Sanitary Com. supra;* requiring the owner to pay a fee of not to exceed one dollar per head for examination of his cows for disease, examinations to be made semiannually.—*Hawkins* v. *Hoye, supra;* requiring the owner to dip cattle for the prevention of scabies or mange, and in event of his failure to do so the State veterinarian to seize the cattle and dip them at the expense of the owner.— *Arbuckle* v. *Pflaeging,* 123 Pac. (Wyo.) 918; rule requiring the owner to sign an agreement to comply with certain rules and to carry out certain requirements as to disinfection and sanitation as required by State Board of Agriculture, in order to receive compensation for cattle destroyed suffering from tuberculosis.—*Kroplin* v. *Truax, supra.* In the above cited cases the acts were held constitutional. The State may destroy cattle suffering from tuberculosis without making compensation therefor. (*Houston* v. *State,* 98 Wis. 481, 74 N. W. 111; *Lawton* v. *Steele, supra.*) Such laws have been held constitutional. Under the authority of these cases the provision for assistance on the part of the owner and the furnishing by him of facilities is not unconstitutional; neither does the act vest unreasonable and unrestricted power in the Department, nor is the act indefinite and uncertain.

We have considered all the contentions made by the defendant challenging the constitutionality and validity of the statute. The act does not violate any of the State or federal constitutional provisions urged against it and is a valid act.

The defendant insistently urges that the trial court committed prejudicial error in the rulings made during the course of the trial on the admission of evidence. It was competent for Dr. Santee and Dr. Zimmerman to testify that each was an employee of the Department as tuberculosis inspector, the length of time that he had been employed by the Department and his duties. (*Pittsburgh, Cincinnati, Chicago and St. Louis Railway Co.* v. *Gage,* 286 Ill. 213; *Thayer* v. *Meeker,* 86 id. 470.) The doctors were appointed by the Department. The law presumes their qualifications as accredited veterinarians, as it must be assumed the director of agriculture did his duty in selecting and appointing them. *Philadelphia and Reading Coal Co.* v. *City of Chicago,* 158 Ill. 9; *Hallett* v. *City of Elgin,* 254 id. 343; *Johnson* v. *Maryland,* 254 U. S. 51, 65 L. ed. 126.

The case at bar was not a suit by Dr. Santee for the recovery of fees for professional services rendered by him. The testimony that he gave as to his qualifications was not controverted. He was a competent witness to testify on the subject of his qualifications and that he was an accredited veterinarian, without the production of his license. The testimony of Dr. Zimmerman as to his qualifications and that he was a licensed veterinarian was also competent. *Tichenor* v. *Newman,* 186 Ill. 264; *North Chicago Street Railway Co.* v. *Cotton,* 140 id. 486; *Abhau* v. *Grassie,* 262 id. 636.

By section 18 of the Tuberculosis act the Department is charged with the administration and enforcement of the act and authorized to adopt reasonable rules and regulations therefor. By the same section a duly authorized agent of the Department in performing the duties vested in the Department is empowered to enter, during usual working hours, upon any premises, farms, stables, sheds or other places where cattle are housed or kept. It is also made the duty of the prosecuting attorney and peace officers to render all necessary assistance to the duly authorized agents

of the Department to administer the enforcement of the provisions of the act.

Section 3 of the act gives the Department the power to select and authorize any accredited veterinarian to make the tuberculin test. None of the witnesses testified to any power or duty conferred upon them by the Department that was not authorized by the act. It was not prejudicial error for the witnesses to testify as to their duties. Neither was it necessary for the People to introduce the rules and regulations of the Department in evidence. If the rules were material to the defendant's case or would tend to impeach the testimony of any of the People's witnesses the defendant could have offered such rules in evidence. We have examined all the rulings about which the defendant has complained on the admission of evidence by the trial court, and while we have not set them forth at length we have found no prejudicial error committed against the defendant by any such rulings.

Aside from the constitutional objections leveled by the defendant against the act, his chief defense on the trial was that he was not the owner of the cattle in question but that his father owned the cattle. He offered in evidence the schedule of personal property made by his father to the tax collector for the years 1931, 1932 and 1933 in listing certain livestock. He further offered in evidence the tax collector's book for the year 1931 for the taxes payable in 1932, showing the amount of the assessment of personal property purported to be owned by the defendant's father and that such taxes were paid by the father. The schedule for 1932 showed thirteen head of cattle of all ages. The defendant testified that some of these same cattle were on the farm in June, 1932, that were listed in such schedule. The father was a resident of Henderson county. He was not called as a witness for the defendant and no reason was assigned for not calling him. The People could not cross-examine the father as to his claimed

ownership of the cattle purported to be proved by the tax schedule, by reason of the failure of the father to testify as a witness, and the People, of course, could not cross-examine on the *ex parte* tax schedules standing alone. The tax schedules were *ex parte* statements of the defendant's father, and in the condition of the record they were not competent evidence in the case on behalf of the defendant. (*Carlton* v. *People*, 150 Ill. 181; *Clark* v. *People*, 224 id. 554; *People* v. *Hauke*, 335 id. 217; *People* v. *Boetcher*, 298 id. 580; *Siebert* v. *People*, 143 id. 571; *Howard* v. *People*, 185 id. 552; *People* v. *Holman*, 313 id. 33.) The court did not err in refusing to admit the tax schedules and the tax collector's books in evidence.

Complaint is made of the giving of the second and ninth instructions on behalf of the People. It is specifically urged that the instructions do not require proof of venue. The second instruction does require proof of venue. Moreover, venue was not a controverted issue in the case. It was not, therefore, necessary to submit the question of venue to the jury by either of the instructions. The instructions are not subject to any of the attacks made upon them, and the second instruction was more favorable to the defendant than the law of the case required. There was no error committed by the court in the giving of such instructions.

Complaint is made of the refusal of the court to give certain instructions requested on behalf of the defendant. These refused instructions are not identified in the abstract by number or otherwise. Instructions should be identified in the record and abstract by number, letter or some appropriate means. Twenty-one instructions were requested by the defendant, eight of which were given. The issues in the case were simple and the several contentions of the defendant were fully covered by the instructions given. The issues being simple, many of the instructions embodied the same legal principle couched in different language. The

instructions given by the court may not have been those that would have been selected by the defendant upon the particular subject out of the number of instructions which he had requested had it been left to him to make the choice of the instructions, but the failure of the court to give the instructions which the defendant would have preferred, if the same legal principle is covered by those given, is not prejudicial error. *People* v. *Ball,* 333 Ill. 104; *People* v. *Brickey,* 346 id. 273.

Complaint is particularly made of the refusal of the court to give a lengthy instruction, unnumbered, shown at pages 55 and 56 of the abstract of record. This instruction, by subdivisions 5 and 6 thereof, required the State to prove, amongst other things, beyond a reasonable doubt, that the defendant failed to provide necessary facilities for making the test and failed to render the necessary assistance required by the Department in and about making such test. These two elements were unnecessary to be proved in order to establish the guilt of the defendant. The *gravamen* of the offense was the refusal of the defendant to submit his cattle for the tuberculin test. Proof of that fact beyond a reasonable doubt was itself sufficient to warrant a verdict of guilty. The second instruction given for the People was modified by the court by inserting therein the same provisions as were embodied in subdivisions 5 and 6 of the defendant's unnumbered instruction and as so modified was given by the court. When the defendant refused to submit his cattle for the purpose of having them tested by the tuberculin test, it followed thereby that he refused to assist or furnish facilities for making the test, if those matters were an issue in this case. However, the Department was not required to demand of him assistance or to demand of him facilities. If demand were necessary that the defendant furnish facilities and render assistance, by refusing to submit his cattle for testing it necessarily follows that such demand or request would have been un-

availing, and it was not necessary for the People to prove any such demand or request. (*Kee & Chappell Dairy Co.* v. *Pennsylvania Co.* 291 Ill. 248; *Rudin* v. *King-Richardson Co.* 311 id. 513.) The court did not err in refusing to give this instruction. No prejudicial error was committed by the court in the refusal of such of defendant's instructions as were refused.

Lastly, it is claimed that the defendant's guilt was not established beyond a reasonable doubt. A material fact, about which there was a conflict in the evidence, was as to whether the defendant was the owner of the cows in question. The evidence conclusively shows that he purported to exercise right of ownership over the cattle. On the three occasions when the defendant talked with the veterinarians he did not disclaim ownership of the cattle. Apparently that question was first raised on the trial of the case. He did admit on cross-examination that he had an interest in the proceeds of the cattle should they be sold. The cattle were at all times on the premises occupied by the defendant. While the burden of proof was not upon the defendant to show that he was not the owner of the cattle, yet his claim was that the ownership of the cattle was in his father. His father was available as a witness and was not called to corroborate the claim of ownership being in him. It was not incumbent upon the State to call the father, because the State had made out at least a *prima facie* case in chief by proof of admissions, statements and declarations of the defendant that he was the owner.

The jury were fully and amply instructed on behalf of the defendant upon the necessity of the State proving, beyond all reasonable doubt, that he was the owner of the cattle. The evidence as to the material facts in issue was conflicting. The determination of the jury as to the ownership of the cattle depended on the weight and credit that the jury gave to the testimony of the several witnesses testifying. It is the proper function of the jury to determine

where the truth lies in a case. Unless we are able to say that the verdict of the jury upon which the judgment was entered by the trial court is palpably erroneous, the judgment of the trial court will not be disturbed. This court, in the situation of the record here, will not substitute its judgment for that of the trial court. (*People* v. *Geisler,* 348 Ill. 510; *People* v. *Witte, supra.*) We are of the opinion that there is sufficient competent evidence in the record to uphold the judgment of conviction of the defendant.

We find no prejudicial error in the record, and the judgment of the trial court is affirmed. *Judgment affirmed.*