*617
 
 Allen, J.
 

 The broad question raised by the instant action is the constitutionality of certain sections of the so-called Riggs Law, which is embodied in Sections 1121-1 to 1121-25, General Code. This act provides for the examination, inspection, and testing of cattle for bovine tuberculosis, and, under certain circumstances, for the summary destruction of the diseased animal.
 

 Section 1121-1 provides that the owner of any herd may petition the department of agriculture for an examination of his herd for tuberculosis;
 

 Section 1121-2 provides for the use of metal numbered tags in case such cattle pass a satisfactory test.
 

 Section 1121-3 defines the tuberculin test.
 

 Section 1121-4 provides for reports upon all such tuberculin tests.
 

 Section 1121-5 provides for detailing an agent to hold such a test, and provides that the department of agriculture shall set aside for each fiscal year from the biennial appropriation for tuberculous cattle an amount sufficient to indemnify the owner according to the provisions of Sections 1121-1 to 1121-25 of the General Code.
 

 Under Section 1121-6, all veterinarians who find reactors are to mark such animals.
 

 Section 1121-7 defines the term “reactor.”
 

 Section 1121-8 provides for the slaughter of condemned cattle, and provides that the owner of such condemned cattle shall be entitled to and receive indemnity, as provided in the rules of compensation of the state board of agriculture, and provides for the method of payment.
 

 There is a further provision in this section for autopsies.
 

 
 *618
 
 Section 1121-9 relates to the removal of reactors from the premises where they are located.
 

 Provisions for disinfecting barns, for quarantine, for co-operation of the owner of the herd, and for authorization of veterinary services, are contained in Sections 1121-11, 1121-12, 1121-13, and 1121-15.
 

 Penalties for failure to report are established in Section 1121-16.
 

 Further sections of the statute provide for tuberculin test of the cattle in the county or township, for certification of the number of cattle in such county or township, and contain other measures with reference to the county and township test, which are not questioned here.
 

 Section 1121-22 provides for a penalty for interfering with a tuberculin test or with the identification of tubercular cattle.
 

 Section 1121-23 provides penalties for selling or concealing animals known to be reactors, and Section 1121-24 penalizes the removal of any animal from a quarantined herd without permission from the department of agriculture.
 

 The particular sections attacked in the instant action are Sections 1121-10 and 1121-14, which read as follows:
 

 Section 1121-10:'“In order to secure indemnity as provided in the provisions of Sections 1121-1 to 1121-25 of the General Code, the value of all cattle reacting to a tuberculin test applied under the direction of the department of agriculture shall be determined1 by an appraisal made by a representative chosen by the owner and a representative chosen by the department of agriculture. In the event of a disagreement as to the amount of the ap
 
 *619
 
 praisal, a third disinterested person shall be selected, at the owner’s expense, by the two to act with them in the appraisal of the cattle.”
 

 Section 1121-14: “The state board of agriculture shall have authority to draft and adopt rules for the compensation to owners for tubercular cattle destroyed under the provisions of Sections 1121-1 to 1121-25 of the General Code, which compensation shall be subject to the appropriations made available by the General Assembly, and such rules shall provide for inspection where indemnity has been waived. The department of agriculture and all officers and employees thereof shall observe said rules. Said rules may also define any of the terms herein used.”
 

 A brief abstract of the rules adopted pursuant to Section 1121-14 has been set forth in the foregoing statement of facts.
 

 It is the claim of the plaintiff in error that this statute and the rules adopted thereunder, and particularly Sections 1121-10 and 1121-14, contravene the right of every person to possess and protect property, conferred by Article I, Section 1, of the Constitution of Ohio, and contravene the provision that, when private property is taken for a public purpose, the owner shall be compensated in money, to be assessed by a jury, as provided in Article I, Section 19, of the Constitution of Ohio.
 

 Plaintiff in error also claims that the Riggs Law, since it provides for no appeal to the court and no determination by a jury and a court of the right to compensation, violates the provisions of Article I, Section 16, of the Constitution of Ohio, that all courts shall be open and that every person for an
 
 *620
 
 injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law.
 

 Since the case arises upon demurrer, all of the well-pleaded facts of the petition are admitted.
 

 Do Sections 1121-10 and 1121-14 of the Riggs Law violate the plaintiff in error’s property right in his cattle, which may be killed if they are shown to be reactors ?
 

 The petition does not allege that any of these cattle have been condemned, nor even that they have been tested. It alleges that active testing is'about to be resumed. For the technical purpose of deciding this demurrer, it might be held that no property right of the plaintiff in error has been violated when he does not show that his property is necessarily to be destroyed under the provisions of the act. However, the petition does allege that the plaintiff has not waived indemnity for any of his cattle, and that, in the event his cattle are slaughtered, he will receive very inadequate compensation. He states that the defendants and their agents threaten to subject his cattle to the tuberculin test, and will order slaughtered the cattle reacting to such test. Hence we proceed to consider whether the plaintiff in error’s property right will be injured if his cattle are destroyed and compensation is made in accordance with the statute.
 

 After consideration of the record and the adjudicated cases, we hold that the statute is constitutional, and that no property right of the plaintiff in error is violated thereby. Statutes of this nature, providing even drastic measures for the elimination of disease, whether in human beings, crops, stock, or cattle, are in general authorized under the
 
 *621
 
 police power. The preservation of the public health is universally conceded to be one of the duties devolving upon the state as a sovereignty, and therefore whatever reasonably tends to preserve the public health is a subject upon which the Legislature, within its police power, may take action.
 

 In providing measures for the protection of public health, the destruction or summary abatement of public nuisances inimical to the public health may be ordered. Unwholesome food may be destroyed; diseased cattle may be slaughtered. Such action is not a taking of private property for public use. If the state were to requisition cattle for the use of its armies in the field, that would constitute a taking of private property for public use; but the destruction of diseased cattle is merely the abatement of a public nuisance. Hence statutes providing for summary destruction of diseased animals are not unconstitutional.
 
 State, ex rel. Spillman,
 
 v.
 
 Heldt,
 
 115 Neb., 435, 213 N. W., 578;
 
 Lawton
 
 v.
 
 Steele,
 
 152 U. S., 133, 14 S. Ct., 499, 38 L. Ed., 385;
 
 Houston
 
 v.
 
 State,
 
 98 Wis., 481, 74 N. W., 111, 42 L. R. A., 39;
 
 Lowe
 
 v.
 
 Conroy,
 
 120 Wis., 151, 97 N. W., 942, 66 L. R. A., 907, 102 Am. St. Rep., 983, 1 Ann. Cas., 341;
 
 Neer
 
 v.
 
 State Live Stock Sanitary Board,
 
 40 N. D., 340, 168 N. W., 601;
 
 City of New Orleans
 
 v.
 
 Charouleau,
 
 121 La., 890, 46 So., 911, 18 L. R. A. (N. S.), 368, 126 Am. St. Rep., 332, 15 Ann. Cas., 46;
 
 Livingston
 
 v.
 
 Ellis County,
 
 30 Tex. Civ. App., 19, 68 S. W, 723;
 
 Fevold
 
 v.
 
 Board of Supervisors of Webster County,
 
 202 Iowa, 1019, 210 N. W., 139;
 
 Schulte
 
 v.
 
 Fitch,
 
 162 Minn., 184, 202 N. W., 719.
 

 We have been cited to no ease holding the contrary. Moreover, these decisions uniformly hold
 
 *622
 
 that the summary destruction of the diseased animals does not constitute a taking of private property for public use, but is the abatement of a public nuisance under the police power of the state. Hence Article I, Section 1, and Article I, Section 19, of the Constitution of Ohio, are not violated.
 

 In
 
 Lawton
 
 v.
 
 Steele, supra,
 
 the Supreme Court of the United States, in discussing the general subject of the police power, recognizes this doctrine when it says that the police power “is universally conceded to include everything essential to the public safety, health, and morals, and to justify the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance. Under this power it has been held that the State may order * # * the slaughter of diseased cattle.”
 

 The mere fact that a partial indemnity is given does not affect the question. Thus it is held in
 
 State, ex rel. Spillman,
 
 v.
 
 Heldt, supra:
 

 “5. It is within the province of the Legislature in the exercise of police power to require the examination, inspection and testing of cattle for bovine tuberculosis, and if such disease is found to exist, to make provisions for the summary destruction of the diseased animals.
 

 “6. In such cases, the mere fact that the Legislature has made provision for but a partial indemnity to the owner for the cattle destroyed does not render the act unconstitutional, as being in conflict with the Fourteenth Amendment of the Constitution of the United States and our own Constitution.”
 

 It is in keeping with this doctrine that the cases hold the compensation given to be a gratuity merely.
 
 State, ex rel. Spillman,
 
 v.
 
 Heldt, supra; Knox Coun
 
 
 *623
 

 ty
 
 v.
 
 Kreis,
 
 145 Tenn., 340, 236 S. W., 1. The latter decision pointed out that a statutory value of one-half of the true valuation was purely a gratuity, but the law was nevertheless sustained. The court says, page 343 (236 S. W., 2): “The Legislature might have directed the destruction of such animals without any compensation under the police power.”
 

 Since the statute does not contravene the private property rights of the plaintiff in error, neither does it violate Article I, Section 16, of the Bill of Bights of the Ohio Constitution, in that no appeal to a court and no assessment of value by a jury are provided. Under the sound doctrine which permits boards of health, without resort to the courts, in order to preserve the public health, to make summary destruction of property, this live stock may also be summarily destroyed in order to maintain the public health among the live stock of the state.
 

 Since the cattle have not yet been tested and no reactors have been found in plaintiff in error’s herd, we do not decide the question of the validity of the rules adopted by the state board of agriculture pursuant to Section 1121-14, G-eneral Code.
 

 The lower courts were correct in sustaining the demurrer to the petition, and the judgment of the Court of Appeals is hereby affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Kinkade, Robinson, Jones, Matthias and Day, JJ., concur.