Common Pleas Court of Miami County.

DORSEY HONEYMAN ET AL. V. PERRY L. GREEN, DIRECTOR ET AL.

Decided January 8, 1930.

*Joseph W. Sharts, William Harry Gilbert,* and *W. A. Haines,* for plaintiffs.

*Gilbert Bettman,* attorney general, *Harry Levy,* assistant attorney general, and *L. E. Harvey,* prosecuting attorney of Miami county, for defendants.

JONES, J.

The briefs filed by all the counsel in this case are very full, and highly creditable, containing an elaborate discussion of every phase of the case. They received careful, anxious and repeated consideration by the court. While I have no other idea than that any decision that this court may render will be reviewed by the higher courts, which, in view of the importance of the matter, is desirable, and while I hope that all the questions involved may finally be settled beyond controversy, I have tried to be as careful as if I had the final word in the controversy.

In one of the briefs filed on behalf of the plaintiffs it is suggested that the pleadings and evidence present five lines of consideration:

1st. Sufficiency of the test petitions filed.

2d. Compliance with the other requirements of General Code, Section 1121-18.

3d. Abuse of administrative discretion by the Department of Agriculature in selecting the tuberculin test.

4th. The social necessity to justify enactment of General Code, Section 1121-18 (area plan and forcible testing).

5th. Constitutionality of the aera plan and forcible test clauses.

These propositions will be considered in a different order, and regarding the 3d and 4th as really covering the same proposition.

As to the question of the constitutionality of the whole of what is generally known as the Riggs law—

I regard it as settled by the decision of the Supreme Court in the case that went up from this county—*Kroplin* v. *Truax, Director,* 119 Ohio St., 610.

It is true that the court, in its syllabus, only referred directly to Section 1121-10, which was all it was required to do, but I am of the opinion that the first clause of the syllabus is sufficient to cover the ground in question:

" 'The Legislature' says the Supreme Court, 'is authorized within its police power to require the examination, inspection and testing of cattle for bovine tuberculosis,' etc."

But in addition, it must be remembered that it is settled beyond controversy that every presumption is in favor of the constitutionality of a law enacted by the people, or through their chosen representatives. No authorities are needed upon this proposition.

In September, 1912, the people of Ohio went so far as to vote into the Constitution of the state that no act of the Legislature should be held unconstitutional by the Supreme Court except by the vote of all the members of the court but one, so that a law passed by the Legislature could not be set aside by the Supreme Court, even if five of its seven members believed it to be unconstitutional.

A case that will be remembered by every citizen of this county is that of *County of Miami* v. *City of Dayton,* 92 Ohio St., 215 (the Flood Conservancy Act), in which, as the court said, "every variety of constitutional question was involved," yet the court held it to be a valid exercise of the police power of the state, and said, in syllabus 7:

"Before a court is warranted in declaring a legislative act unconstitutional, it must clearly appear that the statute is obviously repugnant and irreconcilable with some specific provision or provisions of the Constitution. If there be a reasonable doubt as to such conflict, the statute must be upheld."

. In the Miami county case referred to (*Kroplin* v. *Truax*) the Supreme Court said:

"Statutes of this nature, providing even drastic measures for the elimination of disease, whether in human beings, crops, stock, or cattle, are, in general, authorized under the police power. The preservation of the public health is universally conceded to be one of the duties devolving upon the state as a sovereignty, and therefore whatever tends to preserve the public health is a subject upon which the Legislature, within its police power, may take action."

As to this police power, no less an authority than the Supreme Court of the United States has said, "It is the most essential of powers, at times the most insistent, and always one of the least limitable of the powers of government." 214 U. S., 138; 226 U. S., 137.

As referred to by our own Supreme Court, the Legislature "took action" resulting, among other things, in the enactment of Sections 1121-1 and 1121-3, General Code, providing for the tuberculin test, and defining the same as meaning "any method of testing by tuberculin, or by any other method of testing approved by the Department of Agriculture.

I am satisfied as to the constitutionality of the law, but it is earnestly urged that in the selection and the administration of the tuberculin test the public welfare is endangered and the effect upon the cattle so tested is detrimental rather than beneficial, and that the test itself is a menace to public welfare.

At the outset of the case I entertained grave doubts as to whether the courts would be permitted to go into the question of the efficacy of the test methods prescribed by the State Board of Agriculture in accordance with the statutory authority. I deemed it best and prudent and fair, however, that the plaintiffs should be allowed to introduce their evidence in this particular, reserving the question of its competence or relevancy, feeling that in case of an adverse decision the plaintiffs should be permitted to have in the record the evidence upon which they

relied to support the allegations of the petition in this respect.

Is it the province of the court to determine what methods, remedies, or processes are beneficial or detrimental to the physical condition of cattle, or is the court to determine how they are to affect the human race? Is not this purely a legislative instead of a judicial function? The fathers of our government and the framers of our constitutions, both national and state, have always sought to draw a distinct line between the three great branches of government, executive, legislative, and judicial, and carefully separate their jurisdiction and powers. Courts may interpret laws, but they cannot make them. It seems that the proposition that the court should undertake to exercise the police power, or even to divide it with the representative branch of the government, is on its face an invasion by the courts of a matter which belongs solely to the Legislature. It is not within the province of the courts to enact health regulations, prohibitory laws, traffic laws, quarantines, for anyone, or to interfere with the proceedings of legislative or executive bodies expressly charged with the care of such matters.

In the instant case we have a great volume of evidence pro and con as to the effects of the tuberculin test upon cattle and indirectly upon humanity. It is urged on behalf of the plaintiffs that in many instances the effects of the test have been highly disastrous. We are met with the argument on the other side and it is claimed that in the vast majority of cases no harm has resulted from such tests, and that where apparent injury has followed the testing, it may have been from the incompetence or carelessness of the parties applying the test and not in the system itself. In addition to the evidence of laymen we have had experts in the medical field, who have given widely divergent views as to the effect of the test in question. "Who shall decide when doctors disagree?" It strikes me with great force that it is not within the province of the court to determine as to what kind of a test should be adopted or omitted in the exercise of police

power to prevent the spread of disease through cattle, and that the arguments upon this proposition should have been addressed to the Legislature, either in an effort to prevent the adoption of this law, or in some future effort to secure its repeal or modification. In other words, to justify the interference of the judicial branch of the government with the police power of the Legislature, assuming that there may be cases in which such right exists, it would certainly be requisite that the abuse of the police power had been carried to unreasonable lengths. In other words, there must be a clear and unmistakable and flagrant abuse of discretion before the law interpreting branch of the government could interfere with the law enacting department.

I think the most sanguine of those holding with the plaintiffs' contention would readily admit a most radical difference of opinion as to the merits or demerits of this case. Nor do I think it can be claimed that upon this question either party had proved its contention beyond a reasonable doubt. I therefore am confirmed in what was my first impression, that the wisdom of the legislative action is not subject to the review of the court, and I consider this proposition settled in this state by the Supreme Court in the case of *State, ex rel. Milhoof,* v. *Board of Education of Barberton,* 76 Ohio State, 297. In that case the school board had adopted a regulation excluding from the public schools those pupils who had not submitted to vaccination. While on its face this was not an act requiring compulsory vaccination, yet it had practically that effect, as those not complying with it were debarred from the benefits of education. The Supreme Court held that the question of the wisdom or necessity of such action was for the board and not for the courts, and quoted with approval the language of the highest court of the state of New York. In principle I think the case is precisely like the matter which we have under consideration. The Supreme Court, refusing to pass upon the merits or demerits of vaccination said:

"In a free country, where the government is by the

people, through their chosen representatives, practical legislation admits of no other standard of action, for what the people believe is for the common welfare must be accepted as tending to promote the common welfare, whether it does in fact or not. Any other basis would conflict with the spirit of the constitution and would sanction measures opposed to a republican form of government."

It must be borne in mind that the statutes of this state represent the will of the people as expressed through their chosen representatives, and when that will is once expressed in form of law, resort must be had to the Legislature or the initiative to repeal or alter the law, and not to the courts.

I am therefore clearly of the opinion that the evidence on this proposition cannot be considered by the court or in any way affect its decision.

The only other remaining matter is as to the sufficiency of the petitions which have been filed with regard to the establishment of what is known as the area plan of testing. It is urged in the petition that these petitions were not signed by the requisite number of cattle owners or by the owners of the necessary percentage of cattle to permit the State Board of Agriculture to enroll the county or any of its subdivisions in the area test, and it is also urged that no notice has been given as required by Section 1121-18 of the General Code. In the briefs by the plaintiffs' counsel they no longer urge the objection as to the number of owners who signed the petition, but confine themselves to the number of cattle so represented, upon which latter proposition both sides have at great pains submitted many figures for the consideration of the court, and counsel suggested, and indeed at one time it seemed to the court to be proper, the appointment of a master to pass upon this branch of the case. Upon full consideration I have reached the conclusion that it is unnecessary to go into this branch of the case and immaterial for the purposes of this case whether the prerequisite of the area test had been complied with, for the reason that I consider the last clause of Section 1121-18 is an independent enactment, or,

in other words, not dependent upon whether the area test has gone into effect or not.

The last clause so referred to provides that:

"Whenever ninety per cent. of the cattle of the county or township have been quarantined or tested as herein provided, the Department of Agriculture may, through its authorized veterinarians, enter the premises where the remaining ten per cent. are kept and test all cattle and order the reactors destroyed without the consent of the owners, but compensation or indemnity shall be paid as in other cases."

The record in this case shows that more than ninety per cent of cattle in the county have been tested. It is urged, however, on behalf of the plaintiffs that this is qualified by the expression contained in it "as herein provided." I do not understand that there is any such limitation contained in the statute, but that this latter clause applies whenever the mathematical result is obtained, that ninety per cent. have been tested, whether voluntarily or otherwise, and that the words "tested as herein provided" clearly referred to the test mentioned in Sections 1121-1 and 1121-3. I therefore do not regard it necessary to go into the question as to whether any particular percentage of the cattle is represented by the petitions as it is the ninety per cent. clause and not the seventy-five per cent. that applies.

The questions involved in this case have been passed on by other courts in this state, including two courts of appeals, and, as I am advised, definitely in some cases, and I think reliably in others, the decisions have been uniformly in favor of the validity of the test requirement. It has been so held, as I am advised, by the Courts of Appeals of Cuyahoga and Summit counties. Whether these cases are to go to the Supreme Court I am not advised.

In an opinion delivered by a very able common pleas judge, Judge Starn of Wayne county, he says that one of the questions presented is the right of the defendants to enter upon the premises of the plaintiff for the purpose of making the provisions of one of the Sections of 1121,

General Code of Ohio,—the same question which we are considering in this case; and the judge goes on to say that he holds it to be the law that the right to enter upon the premises and make a test under these conditions existed without any notice being required or without the filing of a petition. All that is necessary is that at least ninety per cent. of the cattle within the township have been tested. The same conclusion has been reached by this court.

The opinion of Judge Starn contains some remarks which so fully define my position in the present case that I feel like incorporating them into this decision as exactly expressing my views:

"Necessarily on the public questions of this kind, people who are interested will be divided on the question. How people feel on that proposition in this county the court does not know, and I might say it is a question concerning which the court is not interested in arriving at the conclusion which it does in this case.

The courts are obliged to, or rather it is the duty of courts to decide questions of law as they see the question, and as they see the answer to the question, regardless of whom it may affect or what the effect may be. In other words, courts do not make laws, but they are called upon only to consider and enforce the laws as enacted by the Legislature, and sometimes people get the opinion that because the courts have decided a law question a certain way, it was decided that way because the court personally felt it ought to be decided that way. That is not the case, or very seldom is the case where courts are influenced by feelings of the public regarding the law. It should be the duty and it is the duty of all courts to examine the questions of law and analyze and solve a question which is presented, and attempt to reach the correct answer regardless of what that problem may be, or what effect the answer to this problem may have.

In this case the court does not know anything about tuberculosis in cattle, nor does not know anything about the manner in which cattle are tested, or whether the test as applied by the Department of Agriculture of the state of Ohio is a sufficient test or not, and therefore it does not have any personal desire in this case one way or the other, but this question is presented to the court and the court makes an effort to reach what it believes is the proper answer according to law."

The court is therefore of the opinion and so holds, that the plaintiffs are not entitled to the relief prayed for in the petition, and that the temporary restraining order heretofore granted must be dissolved, and upon the issues joined in the case the court will find in favor of the defendants and order the petition dismissed at plaintiffs' costs. To which, of course, the plaintiffs' exceptions will be noted, and the amount of the appeal bond fixed as soon as an estimate of the costs which it is to cover can be made by the clerk.

Finally, the court desires to express its appreciation of the efforts of the counsel on both sides and their courteous treatment and endeavors to lighten the labors of the court, or at least assist in undergoing them, and to renew, if it is necessary, the assurance heretofore given that the decision represents the conscientious ideas of the court, and has been rendered without regard to the consequences.

Common Pleas Court of Warren County.

ELIAS OGLESBEE ET AL. V. JOSEPH MOELLER ET AL.

Decided January 28, 1930.

*Robert W. Brown* and *Joseph W. Sharts,* for plaintiff.
*Donald Dilatush* and *Harry Levy,* for defendant.