[Cite as *State ex rel. Bales v. Dept. of Agriculture*, 2018-Ohio-3631.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO EX REL. TIMOTHY BALES | : | JUDGES: |
| | : | |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| Relator-Appellant | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 17-CA-98 |
| | : | |
| OHIO DEPARTMENT OF AGRICULTURE | : | |
| | : | |
| | : | |
| Respondent-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Licking County Court of
Common Pleas, Case No. 17CV-00969


JUDGMENT:                   AFFIRMED


DATE OF JUDGMENT ENTRY:     September 6, 2018


APPEARANCES:

For Relator-Appellant:                For Respondent-Appellee:

ERIC T. MICHENER                      JAMES R. PATTERSON
CHAD YODER                            LYDIA ARKO ZIGLER
225 North Market St., P.O. Box 599    30 East Broad St., 26th Floor
Wooster, OH 44691                     Columbus, OH 43215

*Delaney, J.*

{¶1}   Relator-Appellant Timothy Bales appeals the November 30, 2017 judgment entry of the Licking County Court of Common Pleas.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   Pursuant to Ohio Revised Code Chapter 941, et seq., one of the duties of the Respondent-Appellee Ohio Department of Agriculture ("ODA") is to protect the livestock, poultry, and other animal interests of the state, prevent the spread of dangerously contagious or infectious disease, and provide for the control and eradication of such disease. One such infection monitored and controlled by the ODA is known as chronic wasting disease ("CWD"), which can infect whitetail deer. Chronic wasting disease is an untreatable, dangerously contagious or infectious disease that can be transmitted from deer to deer through environmental contamination or direct contact. CWD leads to the animal's death. It is the goal of the ODA to eradicate CWD, but if CWD gets transmitted to the wild deer population, eradication becomes impossible. Unfortunately, the only way to diagnose whether a deer is infected with CWD is by a post mortem examination and only when the disease has progressed to a certain stage.

{¶3}   Dan Yoder was the owner of captive whitetail deer operations in central Ohio. The ODA had previous interactions with Yoder due to his lack of proper management of his herds of captive whitetail deer. Two herds of captive whitetail deer owned by Yoder were destroyed due to exposure and confirmed contamination of CWD.

{¶4}   Relator-Appellant Timothy Bales purchased Honey Run Farm from Yoder. With the purchase of the farm, Bales also became the owner of one of Yoder's herd of captive whitetail deer. Bales was aware at the time of purchase that the herd of whitetail deer was under quarantine due to herd's risk of exposure to CWD. When Bales purchased

the farm and herd, he did not possess the required license for owning captive whitetail deer.

{¶5} The ODA determined Yoder violated the Honey Run Farm quarantine by bringing two deer into the herd without the knowledge or consent of the ODA. Yoder did not keep the required records to determine whether the deer were exposed to CWD from Yoder's infected herds.

{¶6} On May 17, 2016, the ODA issued Order No. 2017-092 requiring the destruction of all captive whitetail deer currently on the Honey Run Farm because it believed the deer were exposed to CWD. It based its decision to destroy the Honey Run Farm herd on Yoder's violation of the quarantine order, Yoder's poor record keeping, and Bales' lack of a license for owning captive whitetail deer.

{¶7} Bales contested the order and requested an administrative hearing. Prior to the date of the hearing, the ODA destroyed the Honey Run Farm herd. During the post mortem examination, it was determined the herd was not infected with CWD.

{¶8} The matter proceeded to an administrative hearing and the Hearing Officer issued his Report and Recommendation on April 3, 2017. It found it was reasonable for the ODA to determine the Honey Run Farm herd was exposed to CWD that endangered the health and well-being of the Ohio deer population and to recommend that the Honey Run Farm herd be destroyed.

{¶9} Bales appealed the administrative decision to the Franklin County Common Pleas in *Timothy Bales v. Ohio State Department of Agriculture*, Case No. 17CVF-05-4743. The trial court affirmed the administrative decision on September 29, 2017.

{¶10} On September 5, 2017, Bales filed a petition for writ of mandamus with the Licking County Court of Common Pleas seeking compensation from the ODA for the destruction of the Honey Run Farm deer herd. The ODA filed a motion to dismiss pursuant to Civ.R. 12(B) and Bales responded.

{¶11} Bales appealed the September 29, 2017 judgment entry of the Franklin County Court of Appeals to the Tenth District Court of Appeals.

{¶12} On November 30, 2017, the trial court granted the ODA's motion to dismiss under Civ.R. 12(B)(6). It found that Bales had an adequate remedy at law to seek compensation for the herd under R.C. 941.11 and 941.12. Bales appealed the November 30, 2017 judgment to this court.

{¶13} On April 5, 2018, the Tenth District Court of Appeals affirmed the trial court's judgment in *Bales v. Ohio State Department of Agriculture*, 10th Dist. Franklin No. 17AP-757, 2017-Ohio-1312.

## ASSIGNMENT OF ERROR

{¶14} Bales raises one Assignment of Error:

{¶15} "I. THE LICKING COUNTY COURT OF COMMON PLEAS ERRED WHEN PURSUANT TO CIV.R. 12(B)(6), IT DISMISSED APPELLANT'S PETITION FOR WRIT OF MANDAMUS BY HOLDING THAT A STATUTORY REMEDY EXISTS WHICH NEGATES A NECESSARY ELEMENT OF A MANDAMUS ACTION."

## ANALYSIS

{¶16} Bales argues in his sole Assignment of Error that the trial court erred when it dismissed his petition for writ of mandamus against the ODA. We disagree.

**A Motion to Dismiss under Civ.R. 12(B)(6)**

{¶17} Our standard of review on a Civil Rule 12(B) motion to dismiss is de novo. *Huntsman v. State*, 5th Dist. Stark No. 2016CA00206, 2017–Ohio–2622, ¶ 20 citing *Greeley v. Miami Valley Maintenance Contractors Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990). The ODA argued Bales' petition for writ of mandamus should be dismissed for failure to state a claim. A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey County Bd. of Commissioners*, 65 Ohio St.3d 545, 605 N.E.2d 378 (1992). Under a de novo analysis, we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party. *Byrd v. Faber*, 57 Ohio St.3d 56, 565 N.E.2d 584 (1991). In order to dismiss a complaint pursuant to Civil Rule 12(B)(6), it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle plaintiff to relief. *York v. Ohio State Highway Patrol*, 60 Ohio St.3d 143, 573 N.E.2d 1063 (1991).

**No Clear Legal Right or Duty**

{¶18} In his petition for writ of mandamus, Bales does not challenge the authority of the ODA to destroy the Honey Run Farm herd to protect the public health. That argument was addressed and resolved in Bales' administrative appeal of the ODA order to destroy the Honey Run Farm herd. Bales brought the petition for writ of mandamus to compel the ODA to initiate an appropriation proceeding to compensate Bales for the destroyed herd of whitetail deer. He further argued the destruction of the Honey Run Farm herd was a taking pursuant to Article I, Section 19 of the Ohio Constitution and the Fifth Amendment of the Constitution of the United States for which he is entitled to just

compensation. Bales contends the destruction of the herd was a taking because the herd tested negative for CWD.

{¶19} "For a writ of mandamus to issue, the relator must establish a clear legal right to the relief prayed for; the respondent must have a clear legal duty to perform the act; and the relator must have no plain and adequate remedy in the ordinary course of the law." *State ex rel. Dunkle v. Marcelain*, 5th Dist. Licking No. 17-CA-94, 2018-Ohio-1019, ¶ 5 quoting *State ex rel. Widmer v. Mohney*, 11th Dist. Geauga No. 2007–G–2776, 2008–Ohio–1028, ¶ 31.

{¶20} Bales does not dispute that under R.C. 941.11(A), the ODA, "without prior hearing, may order the destruction of any domestic or nondomestic animal * * * infected with or exposed to a dangerously contagious or infectious disease, infected with or exposed to a disease of concern, or determined to endanger the health or well-being of animal populations or public health in the state." Bales does not challenge the authority of the ODA to destroy the Honey Run Farm herd to protect the public health. Bales contends he is entitled to compensation for the destruction of the herd.

{¶21} If an animal is ordered destroyed by the ODA, Ohio law provides an appropriation procedure under R.C. 941.12[1]:

(A) Except as provided in rules adopted under section 941.41 of the Revised Code, no animal shall be ordered destroyed by the director of agriculture, in accordance with this chapter, until that animal has been appraised in accordance with divisions (B) and (C) of this section. * * *

---

[1] The version of R.C. 941.12 in effect at the time of the order by the ODA to destroy the Honey Run Farm herd was S.B. 134, effective June 20, 1994. R.C. 941.12 was amended by H.B. 49, effective September 29, 2017.

(B) The director of agriculture shall appraise, based on current market value, any animal destroyed by his order under this chapter, and may indemnify the owner of the animal if, upon the request of the director, the director of budget and management provides written notification to the director of agriculture that there is an unencumbered balance in the appropriation for the current biennium sufficient to pay the indemnity. The amount of indemnity shall be the appraised value of the animal, less any salvage value and indemnity received from another agency. In no case shall the state indemnity payment exceed fifty dollars per head for a grade animal or one hundred dollars per head for a registered purebred animal.

(C) For the purpose of indemnification, the value of the animal ordered destroyed shall be determined by an appraisal made by a representative chosen by the owner and a representative chosen by the department of agriculture. In the event of a disagreement as to the amount of the appraisal, a third disinterested person shall be selected, at the owner's expense, by the two, to act with them in the appraisal of the animal.

(D) The director of agriculture may refuse to pay an indemnity for any animal ordered destroyed if the owner has been convicted of or pleads guilty to a violation of any of the provisions of this chapter or the rules promulgated thereunder.

{¶22} Under R.C. 941.12(A), the ODA is required to appraise, based on current market value, any animal destroyed under its order. Bales has made no allegation in

these proceedings that the ODA failed to appraise the Honey Run Farm herd pursuant to R.C. 941.12(A).

{¶23} The issue in this matter is indemnification. Bales argues the ODA did not offer him any compensation for the destroyed animals. R.C. 941.12(B) reads, "The director of agriculture *shall* appraise, based on current market value, any animal destroyed by his order under this chapter, and *may* indemnify the owner of the animal * * *." (Emphasis added.) While the world "shall" is usually interpreted to make the provision in which it is contained mandatory, the word "may" is "generally construed to make the provision in which it is contained optional, permissive, or discretionary." *Dean v. Ohio Dept. of Mental Health & Addiction*, 5th Dist. Stark No. 2017CA00233, 2018-Ohio-3159, ¶ 22 citing *State v. Edwards*, 5th Dist. Perry No. 2012-CA-12, 2012-Ohio-5142, citing *Dorrian v. Scioto Conservancy District*, 27 Ohio St.2d 102, 271 N.E.2d 834 (1971). The unambiguous language of R.C. 941.12(B) states the ODA is not required to indemnify an owner for an animal destroyed pursuant to its authority under R.C. 941.11(A). It is within the discretion of the ODA to indemnify the owner of the animal if, upon request of the director, the director of budget and management provides written notification to the director of agriculture that there is an unencumbered balance in the appropriation for the current biennium sufficient to pay the indemnity. R.C. 941.12(B).

{¶24} "It is axiomatic that in mandamus proceedings, the creation of the legal duty that a relator seeks to enforce is the distinct function of the legislative branch of government, and courts are not authorized to create the legal duty." *State ex rel. Pipoly v. State Teachers Retirement Sys.,* 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, ¶ 18. R.C. 941.12 addresses the issue of appraisal and indemnification if an animal is

destroyed by the ODA. There is no dispute in this case that the ODA was within its statutory authority to destroy the Honey Run Farm herd. R.C. 941.12(A) and (B) create a clear legal duty for the ODA to appraise an animal destroyed by the director of agriculture's order. No party has asserted the ODA failed to appraise the Honey Run Farm herd. R.C. 941.12(B) states it is within the discretion of the ODA to indemnify the owner of the animal. Because indemnification is discretionary, there is no clear legal duty on the part of the ODA to indemnify Bales for the destruction of the Honey Run Farm herd.

{¶25} Bales makes the distinction that the indemnification provision of R.C. 941.12 is not applicable in this case because the deer destroyed by the ODA were healthy and not infected by CWD. He states there is no statutory remedy available to him because R.C. 941.12 addresses only diseased animals with little or no value. Under R.C. 941.11(A), the ODA, "without prior hearing, may order the destruction of any domestic or nondomestic animal * * * infected with or exposed to a dangerously contagious or infectious disease, infected with or exposed to a disease of concern, or determined to endanger the health or well-being of animal populations or public health in the state." The facts in this case are established that the Honey Run Farm herd was exposed to Yoder's deer. Two of Yoder's deer herds were destroyed and confirmed to be infected with CWD. Bales does not dispute the ODA was within its authority to destroy the Honey Run Farm herd. The plain language of R.C. 941.11 states the ODA may destroy an animal that is infected with or exposed to disease. R.C. 941.12 applies to animals destroyed pursuant to Chapter 941. Because the Honey Run Farm herd was exposed to disease and destroyed pursuant to R.C. 941.11, R.C. 941.12 provides a remedy for the owner of an animal so destroyed.

{¶26} Bales finally contends the ODA's action in destroying the healthy deer of the Honey Run Farm herd was an unconstitutional taking because it did not abate a public nuisance. It is well-settled that the ordering of the destruction of property in order to preserve the public health is not a taking of private property for public use but, rather, the abatement of a public nuisance. *Kroplin v. Traux*, 119 Ohio St. 610, 621, 165 N.E. 498 (1929). Thus, a property owner is not entitled to compensation. *Id.* As stated above, there is no dispute the ODA was within its authority to destroy the Honey Run Farm herd pursuant to R.C. 941.11. If an owner's animal is destroyed pursuant to R.C. 941.11, R.C. 941.12 provides for appraisal and indemnification procedures to compensate the animal's owner.

{¶27} In this case, Bales failed to establish the ODA had a clear legal duty to compensate him for the destruction of the Honey Run Farm herd. We agree with the trial court that pursuant to Civ.R. 12(B)(6), Bales could prove no set of facts in support of his claim that he was entitled to compensation for the destruction of the Honey Run Farm herd pursuant to R.C. 941.11 and therefore his petition for mandamus is without merit.

{¶28} Bales' sole Assignment of Error is overruled.

## CONCLUSION

{¶29} The judgment of the Licking County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Wise, John, P.J. and

Gwin, J., concur.